IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MICHELLE BONDURANT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE BARNHART, )<br>Commissioner of Social Security )<br>Administration, )<br>)<br>Defendant. ) | CV-04-899-ST<br><br>FINDINGS AND<br>RECOMMENDATION |

STEWART, Magistrate Judge:

**INTRODUCTION**

Plaintiff, Michelle Bondurant ("Bondurant"), brings this action pursuant to 42 USC §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act. For the reasons that follow, the Commissioner's denial should be affirmed.

1 - FINDINGS AND RECOMMENDATION

## INTRODUCTION

Bondurant was born on September 29, 1967, and was 36 years old at the time of the hearing. Tr. 76, 177. She attended college for four years, but apparently received no degree. Tr. 92, 177. She has no previous work experience Tr. 87. She alleges disability based on migraine headaches. Tr. 86.

Bondurant protectively filed an application for SSI on January 14, 2002, alleging disability since October 1, 1975. Tr. 76-79. She later amended her alleged onset date to January 14, 2002. Tr. 200. After her claim was denied initially and upon reconsideration, Bondurant filed an untimely request for a hearing. Tr. 31. The Administrative Law Judge ("ALJ") found that good cause existed for the untimely hearing request and allowed her application to proceed. On January 29, 2004, the ALJ heard testimony from three witness: Bondurant, her husband, and Vocational Expert ("VE") Richard J. Ross. On February 18, 2004, the ALJ issued a decision finding that Bondurant could perform work that existed in significant numbers in the national economy and denying her benefits. Tr. 12. Bondurant timely appealed, but the Appeals Council denied her request for review. Tr. 4-7. Thus, the ALJ's decision the final order of the agency from which Bondurant appeals.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 CFR § 416.920.

In step one the Commissioner determines whether a claimant is engaged in "substantial gainful activity." The claimant is not disabled if he or she is able to engage in substantial gainful activity. *Yuckert*, 482 US at 140; 20 CFR § 416.920(b). Here the ALJ found that Bondurant had not engaged in substantial gainful activity since her alleged disability onset date. Tr. 13.

In step two the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 US at 140-41. An impairment is severe within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 CFR § 416.920(c). If the claimant is not severely impaired within the meaning of the Act, the claimant is not disabled. The ALJ found that Bondurant had the severe impairment of chronic migraine headaches. Tr. 13.

In step three the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 US at 140-41; 20 CFR §§ 416.920(a)(4)(iii), 416.920(d). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is conclusively presumed to be disabled. *Yuckert*, 482 US at 141. The ALJ found that Bondurant's condition did not meet or equal the requirements of a listed impairment. Tr. 13.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis,

3 - FINDINGS AND RECOMMENDATION

despite the limitations imposed by his impairments. 20 CFR § 416.920(e), 416.945; Social Security Ruling ("SSR") 96-8p. The ALJ determined that Bondurant had no significant exertional limitations and that she had the RFC to perform simple routine repetitive work, not requiring the use of ladders, ropes or scaffolds. Tr. 15. In addition, the ALJ found that Bondurant had a limited ability to climb stairs and ramps and must avoid frequent or prolonged exposure to vibration and avoid even moderate exposure to hazardous conditions. *Id*.

At step four the Commissioner will find the claimant not disabled if she retains the RFC to perform work she has done in the past. 20 CFR §§ 416.920(a)(4)(iv) & (f). Based on Bondurant's testimony, the ALJ found that she had no past relevant work experience. Tr. 17.

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. *Yuckert*, 482 US at 141-42; 20 CFR § 416.920(f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 US at 141-42; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR § 416.966. The ALJ found that, based on her RFC, Bondurant could perform work existing in significant numbers in the national economy, specifically those light, unskilled jobs identified by the vocational expert: cashier, photo processor and garment sorter. Tr. 16.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence

means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F3d at 1039-40. If substantial evidence supports the Commissioner's conclusion, the Commissioner must be affirmed. *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).

## DISCUSSION

### I. Doctor Brown

Bondurant contends that the ALJ erred by rejecting the opinion of her treating physician, Dr. Jeffrey J. Brown, who opined that she cannot sustain sedentary work.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1996). However, when the opinion of a treating or examining physician is contradicted in the record, it can be rejected with "specific and legitimate reasons." *Id*. The "specific and legitimate" standard applies here because Dr. Brown's opinion was contradicted by a medical consultant, Robert G. Hoskins, MD. Tr. 153-57.

Because all of the physicians agree that Bondurant suffers frequent migraine headaches, there is no dispute about the underlying medical impairment. The crux of the disability determination is whether Bondurant's symptoms are so frequent and severe that she is unable to perform work. The evidence for this determination is almost entirely comprised of the subjective

5 - FINDINGS AND RECOMMENDATION

pain testimony of Bondurant herself which is the basis of Dr. Brown's opinion about the magnitude of her symptoms. The record contains no objective clinical signs or laboratory diagnostic studies. Tr. 124 (normal CT brain scan), 150-52 (normal examination).

Contrary to Bondurant's argument, the ALJ may conclude that she suffers from chronic migraine headaches which are not as severe and disabling as Dr. Brown reports. While a patient's subjective testimony is a perfectly legitimate source of information for a treating physician, the credibility of such testimony is subject to separate scrutiny. Because the record supports the ALJ in discounting Bondurant's credibility, as discussed next, he was free to disregard Dr. Brown's opinion which was premised on her subjective complaints. *Fair v. Bowen*, 885 F2d 597, 605 (9th Cir 1989).

## II. Claimant's Credibility

Bondurant testified that her migraine headaches are so frequent and incapacitating that she is unable to perform work. In particular, she testified that she experienced headaches "three to four times a week" which require her to remain in bed "about twelve hours, if not longer" at a level of "easily" the "most severe pain imaginable." Tr. 182-83. She also stated in her Pain Questionnaire that her headaches can last anywhere from 12 to 72 hours during which she can perform no activities. Tr. 99-100. The ALJ found that Bondurant was "not totally credible" because her "allegations as to the intensity, persistence and limiting effects of her symptoms are disproportionate and not supported by the objective medical findings or any other corroborating evidence." Tr. 14, 17.

Once a claimant establishes the existence of an impairment and a causal relationship between the impairment and some level of symptoms, the ALJ must provide clear and

6 - FINDINGS AND RECOMMENDATION

convincing reasons for rejecting a claimant's subjective claims. *Morgan v. Comm'r of Social Sec. Admin.*, 169 F3d 595, 599 (9th Cir 1999). If an ALJ finds that a claimant's testimony relating to the intensity of pain and other limitations is unreliable, then the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th Cir 1991). Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. *Yuckert v. Bowen*, 841 F2d 303, 307 (9th Cir 1988); *Sample v. Schweiker*, 694 F2d 639, 642 (9th Cir 1982).

In assessing a claimant's credibility the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. *See Smolen v. Chater*, 80 F3d 1273, 1284 (9th Cir 1996).

The ALJ has discretion to conclude that a claimant is exaggerating "where testimony appears less than candid." *Id*. The ALJ concluded that Bondurant's "description of the severity of her symptoms has been so extreme as to appear implausible." Tr. 14. This conclusion was driven by the inconsistency between her testimony and the broader description of her daily life as it emerged at the hearing. Most notably, Bondurant testified that she manages a household for her disabled husband and nine children ranging in age from six months to 13 years, six of whom she home schools. Bondurant's claim that she experiences the "most severe pain imaginable" for

7 - FINDINGS AND RECOMMENDATION

36-48 hours a week while managing a family of this size and serving as a full-time educator for six children is almost impossible to reconcile. The ALJ was within his discretion to rely upon this inconsistency as a clear and convincing reason to find Bondurant not fully credible.

The court does not reach this conclusion lightly. Bondurant offers several explanations as to the plausibility of this claim, namely that her husband, who does not work due to a severe seizure disorder, shares in the responsibility of educating and managing household affairs, and that she receives additional assistance from her twin sister, her mother, and a remarkably caring godson. Yet the ALJ considered these same explanations and deemed them unpersuasive.

The ALJ found inconsistencies between Bondurant's testimony and that of her husband regarding the family's home-schooling methods. *Id*. Bondurant stated that she and her husband wrote and developed their own curriculum and utilized workbooks. Tr. 179. Her husband testified that they rely on computers and a variety of educational software purchased at Costco and, thus, their curriculum was "already prepared." Tr. 193. Similarly, the ALJ found inconsistencies between their descriptions of how much help they received from family members. Tr. 14. Bondurant implied that she generally received help from family each time she suffered a migraine (allegedly two to four times a week), stating that "there's always someone there to help us." Tr. 183, 186. Bondurant's husband testified that family help only arrived when he was away, which was "hardly at all." Tr. 196. In sum, the inconsistencies between the testimony of Bondurant and her husband are noteworthy and support the ALJ's decision to find Bondurant not credible.

The ALJ also properly noted Bondurant's lack of treatment as a factor in his credibility finding. Tr. 15. The amount of treatment is "an important indicator of the intensity and

8 - FINDINGS AND RECOMMENDATION

persistence of [a claimant's] symptoms." 20 CFR § 416.929(c)(3). Despite the near continuous and extreme pain alleged, the record reveals that Bondurant saw Dr. Brown only nine times over the course of three years from July 2, 2000, to May 2, 2003, and, as noted by the ALJ, was "provided little in the way of treatment" other than medications. Tr. 15, 151, 161. Furthermore, although Bondurant references emergency room visits before 1999, the record contains no associated documentation and no reports of any emergency room visits after the alleged onset date. Tr. 89,109. Conservative treatment during the relevant time period suggests a lower level of pain. *See Johnson v. Shalala*, 60 F3d 1428, 1434 (9th Cir 1995). Furthermore, this anecdotal evidence of previous emergency room visits, which apparently abate after the alleged onset date, is inconsistent with Bondurant's testimony that her headaches were increasing in frequency. Tr. 107.

Bondurant argues that the ALJ ignored the disabling side-effects of her medication. She is mistaken. The ALJ considered these side-effects in his colloquy with the VE. Tr. 202-03. The record reflects, and the ALJ noted, that Bondurant sometimes takes several medications, including Imitrex and Maxalt, to alleviate her headaches, and that some of these medications have a strong sedative effect. Tr. 15. Moreover, because these medications are primarily taken to alleviate migraines, rather than as a prophylaxis against their onset, weighing the effects of the medication on Bondurant's ability to works depends on how often the medications are taken. Having concluded that Bondurant had exaggerated the frequency and intensity of her migraines, it logically follows that side-effects that Bondurant actually suffers are less of an impediment than she contends. Furthermore, it seems obvious that the sedative effect of these medications occurs within the "twelve hours" of convalescence that Bondurant requires after the onset of her

9 - FINDINGS AND RECOMMENDATION

migraines. Tr. 182. Therefore, the effect of the medications is largely addressed within the ALJ's broader assessment of Bondurant's migraine symptoms.

In sum, while it appears that Bondurant has done an admirable job raising her family, home schooling her children, and managing a difficult impairment, the ALJ was within his sound judgment to conclude that she exaggerates her symptoms. The ALJ had the additional benefit of judging her credibility by "observing her physical appearance and demeanor." Tr. 15. "[T]he court may not substitute its judgment for that of the Commissioner." *Edlund*, 253 F3d at 1156. In the aggregate, all the reasons set forth by the ALJ for discrediting Bondurant's testimony as it relates to her subjective levels of pain satisfy the "clear and convincing" standard.

### III. Harmless Error

At the hearing, there was some confusion about how long Bondurant attended college, how many credits she amassed during this time, and whether she completed any degrees. Tr. 177. Bondurant argues that the ALJ erred in stating that she completed an associates degree and that this misunderstanding illustrates how the ALJ "butchered the evidence," requiring a remand.

No remand is necessary to resolve this issue because the error was harmless. Whether Bondurant achieved a degree during her time at college does not effect the disability determination in her case. Although the ALJ concluded that Bondurant's four years at college is evidence that she can do work, the effect of this conclusion is inconsequential because the ALJ's conclusion that Bondurant can perform work is amply supported with other evidence.

Bondurant also argues that the ALJ erred by failing to mention "migraine headaches" in the hypothetical that he offered to the VE. This was not error because the VE included

restrictions that were obviously designed to accommodate the difficulties faced by migraine sufferers, stating the "restrictions are established because of headaches, migraines, and the disruption those cause . . . and, to some degree, the effects of [the] medication that one would receive." Tr. 202-03.

## RECOMMENDATION

For the reasons set forth above, the Commissioner's decision should be affirmed.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due September 6, 2005. If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 16th day of August, 2005.

/s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge